First let me say I'm glad to be here. This appeal raises an issue on the breadth of the over breadth of the Heck v. Humphrey defense as applied to the claims made by Ms. Marlow in the district court. Let me see if I can summarize the ones that are easiest to take first and that is her malicious prosecution claim under section 1983 for which there was no conviction and for that fact alone there can be no Heck defense to that charge and the district court's application effect to that claim obviously has to be reversed. There's no Heck defense that would apply. Same thing is true on the non-federal claim. She had to stand trial anyway. She was convicted. The whole expenses of the trial would have gone forward anyway. She would have. So what's what's her problem with regard to the assault malicious prosecution when the other two convictions were sustained? Well, the damages for the for the defense of the underlying criminal charge can be portioned up. You got three charges. You divide by three. Well, that's very unlikely. What you probably do is you find out whether there was anything additional spent on the assault conviction and the likelihood is hit and it's not. Well, when you have three claims like this together, it's very difficult to separate them. The cost of the defense of the case is overlapping for all of the claims. What are the elements of malicious prosecution? Under 1983? Yes. They're basically derived from state law that there has to be malice. There has to be an absence of probable cause there. Well, let's stop with probable cause. Wasn't there probable cause? I mean, she did stand trial. She survived a directed verdict, went to a jury. Why isn't why isn't there probable cause? For a battery on Officer Johnson, there was no probable cause. That would have been decided if she'd been convicted. Well, no. I mean, there's probable cause to have her stand trial. There wasn't proof beyond a reasonable doubt that there was probable cause. Well, that may be true, but that's not a heck defense. And that's the problem that this appeal raises because the heck defense is the magic bullet that the Court applied to all of these claims. So I've argued and I maintain that malicious prosecution, regardless of the number of elements and what other proof there may go to, or whether it's a favorable termination or whether there was probable cause, has nothing to do with heck. And that was never raised in the trial court, and it was not part of the reasoning the Court gave for dismissing the entire lawsuit. Let me ask you to comment on how the district court distinguished Smith versus Cydia Hemet. Sure. Why was he wrong? Well, for two reasons. There was agreement between defense counsel and myself that the 148 conviction arose from her non-cooperation at the time the officers came from the door. 148 is the assault? No, 148 under California law. That's the obstruction? The obstruction, failure to that if the force, the injury, physical injuries inflicted on the plaintiff occur either before the arrest or the commission of the crime or after it, it's cognizable. The conviction doesn't get called into question. By succeeding on her excessive force claim, by having the door rammed in her face or having her body thrown into the television set inside of her apartment, would not call into question the 148 conviction. That's where the Court went wrong on that part. Because the crime is co-hated. It's finished. It's all the elements of the 148 were met at the time that she went to the door and told them to not come in, at least the way California law defines 148. Justice, this was all one sequence, and it wasn't a before and an after, a discrete before and after kind of analysis. And there's the error in the analysis, because there was a before and an after. I mean, you can't impute what the prosecutor, you can't make a bigger case than the prosecution had to achieve that conviction. The Smith case, if I recall, there was about a five-minute event thereabouts. How long was this event? Very brief. Just brief enough for her to answer the door, deny the officer's entry, have the door kicked into her face and knocked back, and then thrown into the television set. Like seconds? I would assume it was seconds. Well, why is it this way? It was more than that, inside the apartment. No, there was more inside the apartment. The other point I want to make is that What was the more inside the apartment? Well, this has to do with the 241 conviction. This is the anomaly in the case that's taxed me from the beginning. Are you referring to your excessive force claim now? Yes, I am. The analysis I would offer is this. Given the state of the evidence in the criminal trial, that Officer Johnson made no claim to using force in defense of anything but the alleged battery, you know, the pushing that he made, Marlowe committed against him. And that never reached a conviction. But the jury reached a determination that there was an assault on the 241 of the California Evidence Code. The principle that guides us there, heck principle, is an officer is presumed to have reasonable force if the conviction arises from the 241. Problem is here that the officer admits to no force. So you can't make what's not in existence reasonable. And the only force that he admits to is in connection with the 243, the battery upon himself. Since that didn't reflect or didn't become a conviction, therefore, heck wouldn't apply there either on the excessive force claim. There's my answer to the 241, in which the district court didn't distinguish. And then finally, I want to point out that on the non-Federal claims, heck has no application whatsoever. I mean, to dispose of. Before you leave the excessive force claim, so what does the assault apply to? What would heck bar with respect to the 241 claim? Nothing. And that's because of the- You said nothing? I said nothing. Nothing? Nothing. And here's the reason why. Because- Well, could, she came to the door. She refused some entry. That could have been the obstruction right there. That is correct. And the case law is, as long as it could have been something that, we only look at what was necessary to the conviction. So the obstruction alone could have been anything afterwards would not be heck bar. Correct. But couldn't the, but she then slammed, let's see, they then like put their foot in the door and sort of barged and pushed the door some. Actually kicked the door into her. Couldn't that, I said that couldn't be the assault. Well, that would be an assault against her. That wouldn't be an assault against the officer. As long as it's her, it won't do the assault. So what's the assault on the officer? There is no evidence at all. That's the, that's the- Okay, but you lost that one. I mean, you lost that one in state court. I did. And, and here I have that, the conviction, and I have to apply the principles that guide us. And, and the indictment, the indictment on the 241 claim was that she assaulted Johnson, not Lensing. Is that correct? That is correct. Okay, Lensing is the one at the door, is that right? They're both at the door. Who put his foot in the door? I think it was Johnson, but I'm not sure of that immediately. Could her closing the door on, on, on them be an assault? Could it be? It wouldn't be an assault, it would be a battery. I mean, it's a touching, that's the difference. Do we, do we have the indictment in the, in the record? I didn't, I didn't see it. No, you did not. Is there any, is there any detail in the indictment that would be useful here? Well, it's really not an indictment, it's a misdemeanor complaint. And the, the, since I was defense counsel, I mean, I understood what I was doing through that and what the prosecution's theory was that I had to rebut. And their, their claim was that there was an assault somehow. And I never, I mean, at the end of the day, you look at that record and there is no testimony by either Lensing or Johnson that would support that. Now, I wasn't. Well, except for the push, except for the pushing. She puts her hands on him. That's a battery. Well, it, it may be, but it's also an assault. No. It's not a lesser injury offense? No, not at all. Under California law, an assault is an attempted battery. It's an incomplete battery. And there's no evidence of an incomplete battery. There is evidence of the battery for which there was no conviction that Johnson claimed to be the victim of. He also claimed to be the victim of the 241. There's a total absence of evidence of a 241 act or series of acts that would justify that part, that, that conviction. How those people came to that is a mystery to me. And why her criminal appellate attorney didn't make issue of that, I'll never know. But that's what we're stuck with. But how it applies to our present circumstances is this. If she'd been convicted of the 241 and the officer said that he used force in overcoming her resistance to the 241 or the act of the 241, then it is presumed in law, because of the conviction, that the force used was reasonable in that, in that transaction. But there's a total absence of force. So you can't presume that the force used was reasonable in the, in addressing the one, the 241. And that's why heck wouldn't apply. Did you want to reserve your half minute for rebuttal? I'm sorry, I didn't mean to pay attention. Yes, of course. Sure. Thank you, Mr. Frick. I'm sorry. Maurie. Well, this is Wayne Winthers. This is the attorney, state of Orange, on behalf of all respondents. If I may quickly jump to the assault, since that was a major issue here. Why isn't the assault the attempt to close the door on, on Officer Lemon? It's, it's, it's because the assault was against Johnson, the other, the other guy? Correct, yes. The, the charge was against, as, assault Johnson. But where the assault comes in, I believe assault is a lesser-included offense of the battery. And the definition of assault is a lesser-included offense of the battery. And the definition of assault in the Penal Code 240 is an assault is an unlawful attempt coupled with a present ability to commit a violent injury on the person of another. And I believe the evidence shows that that was the shove on Johnson. The jury felt that that wasn't severe enough to be a battery. And they went with the assault charge. That's where that comes in. And that is part and parcel to the force that was used against Ms. Marlowe. Was Officer Lensing there at the door when she called, when she, when she slammed the door? Yes. He, it's Lensing's foot that goes in the door. All right. And, and, and the other officer, his name was, what was his name? Johnson. Johnson. Was he at the door? Yes. He was on the side of the door looking in, yes. And, and so slamming the door while he was standing there couldn't be an attempted assault? I, I don't believe so. No, it's Johnson. An attempted battery rather. I, I, I believe it was the contact that was inside. But it's Lensing, it's Lensing who's got his sort of foot, his foot is sort of liable here. Yes. Johnson, Lensing puts his foot in the door to keep from closing. Okay. Johnson doesn't have his hands in the door jamb or anything that could, right, there's no evidence of that, I guess. But it's an attempt. So it could be that there was some notion that by sort of violently slamming the door she could have endangered Johnson. It turned out she didn't, but. Well, I don't believe the evidence certainly was presented that way from, from the record that, that I read. I believe the only real contact with Johnson was after they got inside. And that's when she pokes Johnson, according to Johnson's testimony. But the contact is, I mean, the problem, of course, is that if you, if there was contact, you'd think there was a battery. So what we're looking for is something that was an attempted contact that didn't happen. Well, it could be a battery. But I believe it could also be an assault. Because if the, if it's not. But how could it be an assault but not a battery? Because they, I think jury felt it was not a violent enough contact to make it a battery. We, I know we speak as battery any touching. But I believe the jury in, in this 12 layperson jury, when they saw this little pokey. Our inquiry, as I understand it in the case law, is not what they could have believed or even what they probably believed. But it's what they necessarily had to believe. Right. And I think what's important is what they actually convicted her of. And that is of the assault. And the only time that could have happened with Johnson was when they had the contact inside the apartment. That's the only contact they had by all the testimony, whether it be from Ms. Marlowe or from Officer Johnson. So I think the only thing in the record that we could apply that to would be that contact. Which resulted in the grabbing by Officer Johnson of Ms. Marlowe, which resulted in her injury. Which is all part and parcel to this. Which again, I think the district court was right on when the district court just granted the motion. Because of that all being one, one long incident. Or not even long, short incident. But all part and parcel. The 148. Mr. Beck said no matter what, the, the malicious prosecution claim is not HECBAR. Can you respond to that? Yes. Well, I think the district court would exact, as stated, the, the elements are, has to be pursued. It's a legal termination, fable to the plaintiff. The, the fact that it was ultimately dismissed is not proof that it was, it was a fable termination to the plaintiff. Just because it was, it was dismissed. But why is that, why is that HEC? I'm sorry? I understand. I, you, there might be a lot of merit to your argument. But I think, I think Mr. Beck's claim was that's not a HEC defense. Well, I don't think the court just relied on HEC. The court relied on the fact that there was no evidence of these elements. The second element being brought without probable cause, and the third initiated with malice. And I, I don't, I don't believe it was all just relied upon HEC. I think, as, as district court stated in page 11 of, in lines 4 through 7 of this order, plaintiff submitted no evidence to demonstrate all the elements of malicious prosecution. Plaintiff did, did not establish the action against plaintiff was initiated with malice. And plaintiff's allegation that defendant officers' reports were false and misleading is insufficient. I, I think that's what district court relied on, and I don't think there's been any evidence otherwise. But you didn't say that they failed to show a termination in their favor. And that's what you're relying on. I'm not only relying on that. I think I'm relying on the fact that it hasn't shown all the elements. Actually, I'm relying on the fact that the district court's ruling was correct. I think the burden is on the appellant to prove otherwise. But, so as long as it's correct in any respect. But I also think my submitted a couple of cases in my brief that show that, that is not a favorable termination just because it was ultimately dismissed. That in itself is not evidence of that. But it was only, it was only dismissed after a hung jury. Yes. After a hung jury and after the appeal on the two convictions was affirmed, and there was certainly no reason for the district attorney to go forward anymore on just the one battery charge when you already have the two convictions. But the very fact that it went to a jury establishes there must have been probable cause. Absolutely. And it was not dismissed by the court at the end of the trial on any finding that the court found that there was, that lacked any, any probable cause or any evidence to even go forward. Do you know what the vote was on the jury? Was that revealed? I don't believe that was revealed. But the fact that it was a hung jury indicated that at least, at least some jurors adopted the government's position. Yes. And as I say, and the court allowed, was going to allow, set a jury trial date and then state it. So the court did not dismiss it at the time, finding that there was not any evidence to even bring it back before. Even if there had been a verdict of not guilty, that still doesn't establish there was no probable cause. Correct. Or initiated with malice. Now, the battery, the failure to find a battery conviction presumably could have been based on the notion that there was excessive force, right? In other words, that they weren't engaged in a lawful performance of their duty. I don't believe so. Not in this case. I mean, in any case, yeah. But not in this case. Because it does seem a little mysterious how they could have found that. Maybe that's how they could have found it. Again, I don't think it's mysterious. I think the reason is because the level of force was not to the extent that the jury found it to be the battery. Perhaps their notion was that at the time, before she – I mean, while she was kind of threatening to hit him but wasn't hitting him, he wasn't excessive, but at the point that she did hit him or was it – they were excessive. Well, I think to adopt that theory, you would have to disbelieve everything the officer said, and the jury certainly did not do that. I mean, this was an exhaustive eight-day miscommunication. Well, they obviously disbelieved something he said. Well, I – Or some of them did. I – as – well, not as to the conviction for the two counts he was convicted of, certainly. Right. But as to the battery, some of them did. I – honestly, I don't agree with you, Your Honor. I believe – I believe it was just the level of force. I believe the assault was simply – and because it was just a poke in the chest and a little shove, they found that wasn't enough. Ms. Marlow is a small individual. I think they just believed that that – that's not enough to go for the battery charge and would just go with the assault. I think those are the only facts – I think that's the only plausible explanation based upon the facts that this case had. Is there anything else I can submit? Thank you, Mr. Twigg. Mr. Beck, you get the last word. We've got a few seconds left. We'll give you a full minute. How's that? That'll be fine, and I think I can cover it. Our problem is this on the excessive force. Even if there's a mystery as to the assault conviction, there was an assault conviction, I gather we have to attach it to something. We have to – and for heck purposes and under Sanford and so on, the question is what did they necessarily have to find in order to do this. And if they couldn't find something at the door, then it had to be something – that occurred at the time of the alleged battery or the alleged excessive force. So how do you get around that? I understand you're frustrated with how they found the assault, but after we're frustrated, we have to figure out something. As I said earlier, if there's no allegation of the officers using force, there was no evidence before that criminal jury to support a justification for force, which would therefore be reasonable by inference based on a conviction. That's how that drill works. There can't be – the 241 conviction could not call into question, couldn't be called into question, if she would succeed on her excessive force claim against Jaunty. And let's see. I'm not following it. Maybe you need to try again. Okay. If they were inside – if – not inside – but if at the time – if she was in fact pushing him and that's when he did whatever he did, which ended up with her injury, that injury. Well, that's injury number two. Right. That's injury number one, which is when they pushed the door and pushed her into something. The door hit her head and she flew into the coffee table. As to – so you would say we could forget about what happened inside but as to the – what happened to the door that was excessive force? Well, I would argue all of it was. Smith would – heck wouldn't bar force number one because the 148 – the force occurred after the 148 was completed and that was the prosecution's theory. The 148 being – The obstruction at the doorway. Just I won't let you in. Right. Okay. That's enough according to the prosecution and that's how the jury likely came to its conclusions. Right. Once inside the door the force is over with, the second use of force is when he also throws her into the television set and knocks her out. As to there, there was force and he claims that she used force first. Correct. And he claims – So you would essentially eliminate that one and go – and say it was the first one could go forward. Well, I think the first one is easier to understand. The second one, in light of the 241, is more difficult and that's why I'm arguing that the officer's own testimony in the absence – where he eschews force where it could have been a 241 doesn't allow the inference that that force was reasonable. Okay. Thank you very much. Your Honor, there's one thing I want to ask or point out and that is there's been comments from yourself about probable cause determination because it went through a jury. In California, misdemeanor cases don't get a probable cause hearing. That determination is never made. No. You're missing my point. There must have been enough evidence to take it to a jury. It must have – the judge, at the close of the prosecution's evidence must have concluded there was sufficient evidence to let it go to the jury or he would have granted a directed verdict, which – right? I get your point. Okay. Thanks. The case just started. You can submit it. Thank you. 0755583 Rodriguez v. Estrue. Each side has 10 minutes.
judges: Silverman, Berzon, Bybee